(No. 91-CC-0600–)

CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Claimant, *v.*
EASTERN ILLINOIS UNIVERSITY, an agency of
THE STATE OF ILLINOIS, Respondent.

*Order filed December 28, 1994.*
*Order filed April 28, 1995.*

SORLING NORTHRUP HANNA CULLEN COCHRAN, LTD. (CRAIG BURKHARDT and MARK K. CULLEN, of counsel), for Claimant.

DUNN GOEBEL ULBRICH MOREL & HUNDMAN (DAVID DUNN, of counsel), for Respondent.

## ORDER

JANN, J.

This cause comes before the Court on cross motions for summary judgment and responses thereto by Claimant and Respondent. Oral arguments were heard on November 9, 1993, in Springfield, Illinois.

### Facts

Claimant, Central Illinois Public Service Company ("CIPS") seeks $220,776.85 for delivery of natural gas to Respondent, Eastern Illinois University ("EIU") pursuant to a contract executed and acknowledged by the parties. The period of October 1984 through June 1990 is at issue herein. During this period, EIU received monthly invoices from CIPS for the transportation and delivery of natural gas purchased by EIU from third-party producers pursuant to the contract. EIU also received invoices from CIPS for natural gas purchased directly from CIPS at the "PGA" rate. The PGA rate is usually higher than the rates charged by third-party suppliers.

During a given month when the amount of gas purchased by EIU from third parties and transported to

CIPS for delivery was less than the amount actually used by EIU during that month, EIU either paid for the difference in volume at the PGA rate on file with the Illinois Commerce Commission or would agree to replace the deficit volume at a later date. If EIU elected to replace the deficit at a later date, CIPS would debit the deficit volume to the "natural gas bank balance." When EIU purchased excess gas in a given month, a credit was applied to the natural gas bank balance for future overusage.

Although Respondent EIU's answers to CIPS' amended complaint denies the allegations of paragraphs 11-13 of the amended complaint, EIU's cross motion for summary judgment appears to rely on the following:

"11. Due to record-keeping errors, credits to Eastern's volume 'bank' were overstated on one or more of the monthly statements for the calendar months of October, 1984 through June, 1990.

12. As a result of the overstatement of volume 'bank' balances, CIPS did not bill Eastern for various dollar PGA amounts, which it otherwise would have billed notwithstanding the record-keeping errors.

13. CIPS recalculated the 'bank' balances to correct for record-keeping errors. Pursuant to such recalculations, CIPS determined that PGA dollar amounts were owed for the months of August, 1989, September, 1989, May, 1990, and June, 1990 in the amount of $220,776.85."

CIPS submitted a bill to EIU on or about July 26, 1990, reflecting a negative "bank" balance of 685,267 therms existing as of June 30, 1990. This billing was in the amount of $220,776.85 and has not been paid to date by EIU. The billing reflected revisions of the "bank" balance based upon CIPS' internal audit and a report of independent public accounting by Arthur Anderson dated December 20, 1989, which corrected previous accounting errors.

### The Law

The parties do not contest the amounts of gas actually delivered and used. The primary issue we must decide is the applicability of 83 Ill. Admin. Code 280.100(a) which provides:

"A utility may render a bill for services or commodities provided to:

● ● ●

(2) a nonresidential customer only if such bill is presented within two years from the date the services or commodities were supplied."

The parties agree EIU is a nonresidential customer. EIU asserts that pursuant to the above provision, CIPS may not recover amounts for overages actually accrued in the period prior to June 29, 1988, but billed in July 1990.

Claimant agrees that negative "bank" balances were contemplated by the parties and used for EIU's benefit for the periods September 1987 through May 1988 and again from June 1989 through January 1990. These negative balances were subsequently repaid by excess purchases by EIU during October 1989 and February 1990.

CIPS further argued that although accounting errors dated back to September of 1986 and were discovered in late 1989, gas bank arrearages comprising the $220,776.85 billed in July 1990 are specifically attributed to August 1989, September 1989, May 1990 and June 1990 by applying the FIFO (first-in-first-out) accounting method. This method would allegedly place all arrearages within the two-year time frame required by section 280.100(a) of the Ill. Admin. Code.

Respondent argues that the overstatements of "bank" credits booked by CIPS were actually understatements of usage. EIU points out that CIPS's complaint at paragraph 12 alleges a failure to bill for overusage. The Court specifically asked if this was an issue of material fact. Respondent stated that there were no facts in dispute and voiced a desire for ruling on the summary judgment motions.

Respondent further argued that through CIPS's errors, EIU was denied the opportunity to establish a positive "bank" balance by purchasing gas from third parties

at lower cost and that its ability to accurately budget for gas usage was impaired.

Respondent admits that EIU owes CIPS for 249,881 therms in overage for the two-year period preceding the July 1990 bill.

CIPS argued that the course of dealing, custom and usage with EIU which allowed for negative balances amounted to a waiver of the provisions of section 280.100(a) of the Ill. Admin. Code.

Neither the parties nor the Court were able to find applicable case law on this matter. We shall, therefore, proceed on the basis of strict construction of section 280.100(a) of Ill. Admin. Code.

CIPS' arguments that FIFO accounting methods place all arrearages within the two-year statute of limitations are not convincing. FIFO is a widely-accepted accounting principle which the Court recognizes.

However, FIFO consistently applied would have disclosed "bank" deficits in 1986 and allowed EIU to pay or obtain gas to offset said deficits in a timely manner. EIU did address deficits brought to its attention, presumably using a FIFO method during the course of the agreement prior to July 1990.

CIPS' admission of errors dating back to 1986 regarding the correct balance and the subsequent discovery of said errors in late 1989 make its argument of overages solely attributable to the two-year statutory period highly suspect. The evidence does not adequately support CIPS contentions.

The evidence indicates and the parties agree that CIPS received 6,848,643 therms of gas from third-party suppliers for EIU in the two years preceding July 1990.

EIU's metered usage of gas in the same period was 7,098,524 therms, resulting in a billable deficit of 249,881 therms of gas. The evidence indicates that CIPS has tested and determined EIU's meters are correct.

EIU cannot waive the provisions of section 280.100(a) through course of dealing, custom and use.

It is hereby ordered that CIPS' motion for summary judgment is denied to the extent it exceeds 249,881 therms of gas. EIU's motion for summary judgment is granted as to the deficit of 249,881 therms of gas which may be billed pursuant to section 280.101(a) Ill. Admin. Code. The payment shall be made at the applicable overage PGA rates for the two years in question.

The entire two-year deficit may not be attributed to June, 1990 as argued by CIPS based upon its FIFO accounting previously discussed. By the same token, EIU may not pay the cheaper third-party average price of $0.15 per therm as argued in its cross motion for summary judgment. EIU seeks to pay the lesser price based upon CIPS's earlier accounting errors. To allow EIU to pay the lower price would result in EIU benefitting from the same "rolling balance" methods it attacks in CIPS's practices.

Rider C to the contract states:

"The Company will not recognize a negative balance when the quantity of gas used by the customer for the billing period exceeds the customer's gas delivered to the Company [from third party wellheads], including a previous positive balance, such excessive volumes consumed shall be system (CIPS) gas subject to billing under the provisions of the applicable rate. (PGA)"

Further, there is no evidence that EIU had any PGA rate credits during the two-year period. EIU shall receive no PGA credits in the computation of the final payment to CIPS.

EIU shall receive credit for applicable take-on-pay charges and agency fees under the contract.

EIU shall pay applicable State and municipal taxes due CIPS on the negative balance of 249,881 therms.

CIPS shall submit a recalculation of payment due based upon the foregoing findings within 30 days of the date of this order. EIU shall have 30 days from the date of CIPS's filing to dispute said calculations.

## ORDER

JANN, J.

On December 28, 1994, an order was entered denying Claimant's motion for summary judgment to the extent it exceeded 249,881 therms of natural gas. Respondent's cross-motion for summary judgment was granted as to determination of the deficit of natural gas at 249,881 therms. Claimant was directed to submit a recalculation of payment due based upon the findings of the Court.

Claimant has submitted a recalculation of payment due in accordance with the Court's order. The total amount of said payment is $87,684.91, which includes 249,881 therms of natural gas billed at the applicable Purchased Gas Adjustment (PGA) rate as filed by Claimant with the Illinois Commerce Commission, credits for take-or-pay charges, agency fees and the applicable State and municipal taxes.

Claimant's recalculation of payment due was timely filed on January 17, 1995. The Court's order of December 28, 1994, directed Respondent to file any dispute or objection to said recalculation within 30 days of Claimant's filing. Respondent has not filed any objection within the prescribed period.

Wherefore, we hereby award Claimant the sum of $87,684.91 as full and final compensation in this cause.